UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------ x
JANE MILLER,                   :
                               :
          Plaintiff,           :      Civil No. 3:16-cv-174(AWT)
                               :
v.                             :
                               :
THOMAS DUNKERTON, in his       :
official capacity as the       :
Republican Registrar of Voters :
for the Town of Brookfield,    :
Connecticut; MATTHEW GRIMES, in :
his official capacity as the   :
Chairman of the Brookfield     :
Republican Town Committee for  :
the Town of Brookfield,        :
Connecticut; GEORGE WALKER, in :
his official capacity as a     :
member of the Brookfield       :
Republican Town Committee; and :
MARTIN FLYNN, in his official   :
capacity as a member of the    :
Brookfield Republican Town     :
Committee,                     :
                               :
          Defendants.[1]        :
------------------------------ x
```

## RULING ON MOTIONS TO DISMISS

Plaintiff Jane Miller ("Miller") brings this action against

Thomas Dunkerton ("Dunkerton"), in his official capacity as the

former Republican Registrar of Voters for the Town of

Brookfield, and Matthew Grimes ("Grimes"), in his official

capacity as the Chairman of the Brookfield Republican Town

---

[1] Martin Flynn was terminated as a defendant on July 20, 2016, and George Walker was terminated as a defendant on August 2, 2016.

Committee for the Town of Brookfield.  The five-count complaint
sets forth four counts for claims pursuant to 42 U.S.C. § 1983:
Violation of Plaintiff's Right to Freedom of Association (First
Count); Violation of Plaintiff's Fundamental Right to Vote
(Second Count); Violation of Plaintiff's Due Process Rights
(Third Count); and Violation of Plaintiff's Equal Protection
Rights (Fourth Count).  The Fifth Count alleges a Conspiracy to
Violate Miller's Civil Rights in violation of 42 U.S.C. § 1985.
Dunkerton and Grimes have filed separate motions to dismiss the
complaint in its entirety.  For the reasons set forth below,
their motions are being granted because the plaintiff's claims
are barred by the doctrine of res judicata.

I.   **FACTUAL BACKGROUND**

Miller is a longtime resident of the Town of Brookfield,
Connecticut.  In 2003, she first registered as a Republican with
the Brookfield Republican Registrar of Voters.  From 2004 to
2011, Miller supported Republican nominees endorsed by the
Brookfield Republican Party by posting signs, passing out
literature, making phone calls, wearing buttons, donating money,
and visibly showing support at debates and other local events.

In 2009, Miller successfully ran as the Republican nominee
for a seat on the Brookfield Board of Education.  In 2013,
Miller sought the Republican nomination from the Brookfield
Republican Party for her reelection bid.  At the July 23, 2013

2

Brookfield Republican Caucus (the "July 2013 Caucus"), the Brookfield Republican Party announced its decision not to endorse Miller for reelection even though she was the Republican incumbent.  The Brookfield Republican Party nominated only one woman at the July 2013 Caucus.

Following the July 2013 Caucus, the Brookfield Democratic Town Committee asked Miller to run for the Brookfield Board of Finance as an unaffiliated voter on the Democratic slate. Miller agreed to do so.  While she was not endorsed at the Brookfield Democratic Caucus, which was also held on July 23, 2013, she was nominated by the Brookfield Democratic Party to fill a ballot vacancy on the Board of Finance.  In order to run for the vacant position on the Board of Finance on the Democratic slate, Miller changed her party affiliation to "Unaffiliated" the next day, i.e. July 24, 2013.  Miller was not elected to the Board of Finance.

In November 2013, shortly after the election for Board of Finance, Miller submitted a re-registration form to Dunkerton, the Republican Registrar of Voters.  Dunkerton accepted and then initialed the form, which effectively re-affiliated Miller with the Republican Party as of December 4, 2014.

During a January 2015 meeting of the Brookfield Republican Party, there was a discussion regarding forcibly disaffiliating Miller from the Republican Party pursuant to Conn. Gen. Stat. §

3

9-60, et seq., which allows municipal registrars to remove party members if the registrar determines that the party member is not affiliating with the party in good faith and does not intend to support the party's principles or candidates.  At this meeting, members in attendance were asked to raise their hands if they supported dis-affiliating Miller from the Republican Party, and no member raised his or her hand.

On March 19, 2015, Dunkerton issued Miller a citation as provided for by Conn. Gen. Stat. § 9-60.  The issuance of a citation is the first step for forcibly removing a member from a political party.  The citation serves to give the recipient notice of the date and time of a hearing at which the recipient must appear and demonstrate "why his name should not be erased or excluded from such enrollment list."  Id.  Section 9-61 enumerates four acts that constitute prima facie evidence that a member is not affiliating in good faith, if they occur within a period of two years prior to the date the Registrar issues the citation: (i) enrollment in any other political party or organization; (ii) knowingly being a candidate at any primary or caucus of any other party or political organization; (iii) active affiliation with any other political party or organization; and (iv) being a candidate for office under the designation of another party or organization.  The citation

4

issued to Miller scheduled her hearing for March 26, 2015, but it was later moved to April 9, 2015.

At any hearing under Conn. Gen. Stat. § 9-62, the Registrar of Voters and party chairperson must hear evidence to determine whether there is reasonable proof that the cited member was not affiliating with the party in good faith.  If there is reasonable proof that the cited member was not affiliating with the party in good faith, then the cited member is removed from the party for a period of two years from the date of the last detrimental act.  See Conn. Gen. Stat. §§ 9-60, 9-61.

Dunkerton and Grimes presided over the April 9, 2015 hearing, at which Miller was charged with committing three acts that constituted prima facie evidence of not affiliating with the Republican Party in good faith.  On or about April 20, 2015, Dunkerton and Grimes issued an unsigned and undated decision (the "Decision").  They found that there was "reasonable proof" that Miller committed two out of the three acts.  The Decision stated that (i) there was reasonable proof Miller was "a candidate for office under the designation of another party" and (ii) Miller had "actively affiliated" with the Democratic Party. The Decision stated that there was not "reasonable proof" that Miller was knowingly "a candidate at any primary or caucus of another party."

Conn. Gen. Stat. § 9-63 provides aggrieved individuals the
right to seek emergency review within ten days of the decision
to remove them from a political party.  On appeal, the
Connecticut Superior Court must promptly conduct a hearing to
determine whether removal was proper.  If the court "find[s]
that the petitioner is entitled to relief, [the court] shall
issue an order directing [the registrar] or deputy registrar to
forthwith restore the name of such elector to the list from
which it was removed[.]"  § 9-63.

Here, Miller promptly appealed the Decision to Connecticut
Superior Court (the "State Court Action").  The Superior Court
held an evidentiary hearing on July 27, 2015.  Miller submitted
a post-hearing brief arguing, among other things, that her
removal from the Brookfield Republican Party: (i) violated her
right to freedom of association; (ii) violated her right of due
process; and (iii) that Conn. Gen. Stat. § 9-60 was being
enforced against her in an arbitrary and discriminatory manner.

A ruling in the State Court Action was issued on August 18,
2015.  The Superior Court concluded that there was "more than
sufficient evidence from which the court can conclude that the
plaintiff did commit specific acts under § 9-61 which constitute
prima facie evidence supporting defendant's discretionary
erasure or exclusion of the plaintiff from the enrollment list."
(Memorandum of Decision Re: Plaintiff's Petition Pursuant to

General Statutes § 9-63 (Doc. No. 54-2, Ex. 2) ("Memorandum of Decision") at 8.)  The Superior Court rejected Miller's constitutional claims.  On September 8, 2015, Miller appealed that ruling.

In December 2015, two men who were formerly members of the Brookfield Republican Party sought to be re-affiliated with the Republican Party.  They had changed their political affiliation to "Unaffiliated" and run for town office as Democratic Party candidates.  These two men were readmitted to the Brookfield Republican Party and no citation was issued to either man pursuant to Conn. Gen. Stat. § 9-60.  The Brookfield Republican Town Committee consists of 25 members.  Of these 25 members, only five are women and only one of those women is an elected official.  None of the five women holds an officer position in the Brookfield Republican Party.

On February 3, 2016, Miller initiated this action while the appeal in her State Court Action was pending with the Connecticut Supreme Court.  On October 19, 2016, the Connecticut Supreme Court dismissed the plaintiff's appeal.[2]

_____

[2] On July 19, 2016, while the State Court Action was on appeal to the Connecticut Supreme Court, Miller was reinstated to the Brookfield Republican Party's voter rolls by Ryan Murphy, the new Registrar of the Brookfield Republican Party.

## II.   LEGAL STANDARD

"On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true." Todd v. Exxon Corp., 275 F.3d 191, 197 (2d Cir. 2001).  A motion to dismiss is meant "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 550, 555 (2007).

A court can dismiss "a complaint for failure to state a claim based on the affirmative defense of res judicata if 'all relevant facts are shown by the court's own records.'" AmBase Corp. v. City Investing Co. Liquidating Trust, 326 F.3d 63, 72 (2d Cir. 2003) (citing Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992)).  "[C]onsideration is limited to the factual allegations in plaintiffs' . . . complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial

notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).  The court also "may judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the Court." Patrowicz v. Transamerica HomeFirst, Inc., 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

**III. DISCUSSION**

The defendants raise several arguments in support of their motions to dismiss, namely that the plaintiff's action is barred under the doctrines of res judicata and collateral estoppel, Younger abstention applies, Colorado River abstention applies, Grimes is not a state actor, and the plaintiff has failed to state claims upon which relief can be granted.  Because the court concludes that the plaintiff's action is barred under the doctrine of res judicata, the other grounds raised by the defendants are not discussed.

Both the Full Faith and Credit Clause of the United States Constitution, U.S. Const. art. IV, § 1, and the corresponding Full Faith and Credit statute, 28 U.S.C. § 1738, require that a federal court accord a state court judgment the same preclusive effect which it would merit under the law of the state from which it originated.  See Migra v. Warren City Sch. Dist. Bd. of

9

<u>Educ.</u>, 465 U.S. 75, 81 (1984); <u>Kremer Chem. Constr. Corp.</u>, 456
U.S. 461, 466 (1982); <u>Hoblock v. Albany Co. Bd. of Elec.</u>, 422
F.3d 77, 93 (2d Cir. 2005).  "To accord full faith and credit to
a given state-court judgment, the court must at least apply that
state's principles of res judicata and collateral estoppel."
<u>Town of Deerfield v. FCC</u>, 992 F.2d 420, 429 (2d Cir. 1993).  Res
judicata applies equally to constitutional claims arising under
Section 1983 which could have been argued in an earlier state
court proceeding. <u>See</u> <u>Migra v. Warren City School Dist.</u>, 465
U.S. 75 at 84-85.

Connecticut law is that "under the doctrine of res
judicata, or claim preclusion, a former judgment on a claim, if
rendered on the merits, is an absolute bar to a subsequent
action on the same claim . . . [or any claim based on the same
operative facts that] might have been made." <u>Linden Condominium
Ass'n., Inc. v. McKenna</u>, 247 Conn. 575, 594 (1999).  In <u>Powell
v. Infinity Ins. Co.</u>, the Connecticut Supreme Court stated:

> The doctrine of res judicata holds that an
> existing final judgment rendered upon the
> merits without fraud or collusion, by a
> court of competent jurisdiction, is
> conclusive of causes of action and of facts
> or issues thereby litigated as to the
> parties and their privies in all other
> actions in the same or any other judicial
> tribunal of concurrent jurisdiction.... If
> the same cause of action is again sued on,
> the judgment is a bar with respect to any
> claims relating to the cause of action which

>           were actually made or which might have been
>           made.

282 Conn. 594, 600-01 (2007) (internal quotation marks

omitted).

It is "well established . . . that res judicata bars not

only subsequent relitigation of a claim previously asserted, but

subsequent relitigation of any claims relating to the same cause

of action ... which might have been made." Tuccio Custom Homes,

LLC v. Lamonica, 116 Conn. App. 527, 530 (2009) (Per curiam)

(internal quotation marks and citation omitted) (quoting Isaac

v. Truck Service, Inc., 253 Conn. 416, 421 (2000)).  "The claim

that is extinguished by the judgment in the first action

includes all rights of the plaintiff to remedies against the

defendant with respect to all or any part of the transaction, or

series of connected transactions, out of which the action

arose." Comm'r of Envtl. Prot. v. Conn. Bldg. Wrecking Co., 227

Conn. 175, 189-90 (1993) (internal quotation marks and

alterations omitted).

The Connecticut Supreme Court has explained the applicable

test under Connecticut law, i.e. a transactional test, as

follows:

>           We have adopted a transactional test as a
>           guide to determining whether an action
>           involves the same claim as an earlier action
>           so as to trigger operation of the doctrine
>           of res judicata. [T]he claim [that is]
>           extinguished [by the judgment in the first

> action] includes all rights of the plaintiff
> to remedies against the defendant with
> respect to all or any part of the
> transaction, or series of connected
> transactions, out of which the action arose.
> What factual grouping constitutes a
> transaction, and what groupings constitute a
> series, are to be determined pragmatically,
> giving weight to such considerations as
> whether the facts are related in time,
> space, origin, or motivation, whether they
> form a convenient trial unit, and whether
> their treatment as a unit conforms to the
> parties' expectations or business
> understanding or usage....

New England Estates, LLC v. Branford, 294 Conn. 817, 843 (2010)

(internal citation and quotation marks omitted).

"In applying the transactional test, [the Supreme Court]

compare[s] the complaint in the second action with the pleadings

and the judgment in the earlier action."  New England Estates,

LLC v. Branford, 294 Conn. 817, 843 (2010) (Internal quotation

marks omitted). "[E]ven though a single group of facts may give

rise to rights for several different kinds of relief, it is

still a single cause of action."  Weiss v. Weiss, 297 Conn. 446,

461-62 (2010) (internal quotation marks omitted).

Ordinarily, a party asserting res judicata must have been a

party in the underlying case, or in privy with a party in that

case.  However, strict mutuality is not required under certain

circumstances:

> The plaintiff also argues that there is no
> identity of the parties, thereby making res
> judicata inapplicable.  We disagree that

12

complete mutuality is necessary under these
circumstances.  'Under the doctrine of res
judicata, a final judgment, when rendered on
the merits, is an absolute bar to a
subsequent action, between the same parties
or those in privity with them, upon the same
claim.'  . . . [C]ases in which there is a
nonmutuality situation must be subdivided,
for two distinct principles are involved:
(1) where the plea of res judicata is raised
by a party to the prior suit against one who
was not such a party, and (2) where the plea
of res judicata is raised by one not a party
to the prior suit against one who was such a
party.  As regards the  first class of
cases, it was reiterated that the
requirement of mutuality should be
retained . . . On the other hand, a very
different situation arises . . . in the case
where res judicata is pleaded by one not a
party to the first suit against one who was
such a party.  As to this situation, the
court stated that, assuming the identity of
the issues, a plaintiff who deliberately
selects his forum and there unsuccessfully
presents his proofs is bound by such adverse
judgment in a second suit involving all the
identity issues already decided; that the
requirement of mutuality must yield to
public policy; and that to hold otherwise
would be to allow repeated litigation of
identical questions expressly adjudicated,
and to allow a litigant who has lost on a
question of fact to reopen and retry all the
old issues each time he can obtain a new
adversary not in privity with his former
one.

Bruno v. Geller, 136 Conn. App. 707, 728 (2012).

Res judicata extinguishes claims despite the fact that "the

plaintiff is prepared in the second action [1] [t]o present

evidence or grounds or theories of the case not presented in the

first action, or [2] [t]o seek remedies or forms of relief not

demanded in the first action." Duhaime v. American Reserve Life Ins. Co., 200 Conn. 360, 364-65 (1986). "[A] judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." Powell, 282 Conn. at 607. See also Delahunty v. Massachusetts Mutual Life Ins. Co., 236 Conn. 582, 589 (1996) (holding that for purposes of res judicata: "A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose . . . . This is true "regardless of what additional or different evidence or legal theories might be advanced in support of it.") (internal quotation marks omitted; emphasis added).

"[A] plaintiff cannot, under the doctrine of res judicata, withhold certain claims from one action and then raise those claims in a later action when an adequate opportunity existed to raise all claims in one action." Daoust v. McWilliams, 49 Conn. App. 715, 726 (1998). Thus, "[t]he appropriate inquiry with respect to [claim] preclusion is whether the party had an adequate opportunity to litigate the matter in the earlier proceeding . . . ." Sotavento

Corp. v. Coastal Pallet Corp., 102 Conn. App. 828, 834 (2007)

(internal quotation marks omitted).[3]

Dunkerton, as the Republican Registrar of Voters, was the only defendant in the State Court Action, which was filed on April 30, 2015.  The complaint in that action alleged the following:

> 3.  On April 23, 2015, the name of the Petitioner was improperly and unlawfully removed from the enrollment list of the Brookfield Republican Party by Defendant, purportedly pursuant to General Statutes § 9-60 et seq.
>
> 4.  The aforesaid action of Defendant was improper and unlawful for the following reasons:

_____

[3] The plaintiff argues that she did not have an adequate opportunity to fully litigate the issues in the State Court Action.  This contention lacks merit.  The post-trial brief filed by the plaintiff in the State Court Action and the Memorandum of Decision issued by the court reflect, as discussed below, that the claims in the First, Second, and Third Counts in this action were fully litigated, and the claims in the Fourth and Fifth Counts could readily have been litigated.  The defendants appear to argue that the fact that proceedings under Connecticut General Statutes §9-63 are on an expedited track means, but make no showing, that they were actually deprived of an adequate opportunity to litigate the matter.  Rather, they cite Locurto v. Giuliani for the proposition that an opportunity to litigate is not full or fair "when a litigant is denied discovery, available in the ordinary course," 447 F.3d 159, 171 (2d Cir. 2006), but they do not represent that they were denied discovery in the State Court Action or even sought discovery.  They cite an inapposite case, Arthur v. Allen, 248 Fed. Appx. 128, 132 (11th Cir. 2007) for the proposition that four months is not enough time to develop claims in a complete § 1983 action, but the State Court Action bore no resemblance to Arthur v. Allen—a death penalty case.  The court can discern no basis for a conclusion that the plaintiff did not have an adequate opportunity to litigate her claims in the State Court Action.

a. Defendant had conducted a hearing where the evidence presented substantiates a finding which does not support the Defendant's actions.

b. The conduct of the proceedings violated Petitioner's right to due process of law.

c. The Defendant failed to establish a standard of conduct to qualify as a member of the Brookfield Republican Party and, as a result, the Petitioner has been prejudiced.

d. The accepted standard for membership in the Brookfield Republican Party allows active membership in other political parties and encourages members to run for political office on other political party slates while enrolled in the Brookfield Republican Party.

e. The action of the Defendant holds Petitioner to a standard not required by others.

(Connecticut Superior Court Petition (Doc. No. 40-3, Ex. 2) ("State Compl.") ¶¶ 3-4.)  The plaintiff sought a writ of mandamus or an order directing Dunkerton to restore her name to the enrollment list of the Republican Party and any other legal and equitable relief deemed just.  The Superior Court denied the petition for a writ of mandamus.  The plaintiff appealed that judgment to the Connecticut Appellate Court and the appeal was transferred to the Connecticut Supreme Court.  The Connecticut Supreme Court "has held the judgment of a trial court to be final, despite a pending appeal, when the issue was . . . the applicability of the rules of

16

res judicata." <u>Enfield Fed. Sav. & Loan Ass'n v. Bissell</u>, 184 Conn. 569, 573 (1981).

Like the complaint in the State Court Action, the plaintiff's complaint in this action (the "Federal Complaint") alleges that "[o]n April 23, 2015, in accordance with the Decision of Defendants, and pursuant to Conn. Gen. Stat. § 9-61, Ms. Miller's name was removed from the Republican Enrollment List against her wishes." (Complaint for Declaratory and Injunctive Relief and Compensatory Damages (Doc. No. 1) ("Fed. Compl.") ¶ 61.) The complaint here then sets forth five causes of action. Each of these causes of action is barred by the doctrine of res judicata.

## A. First Count (Right to Freedom of Association) and Second Count (Right to Vote)

The Federal Complaint alleges in the First Count, a claim for violation of the plaintiff's right of freedom of association, that:

> 69. By forcibly dis-affiliating Plaintiff from the Republican Party, Defendants, acting under the color of state law, knowingly and intentionally deprived Plaintiff of her fundamental right to freedom of association under the First Amendment to the Constitution of the United States, in violated of 42 U.S.C. § 1983.

(Fed. Compl. ¶ 69.) The Second Count, a claim for violation of the plaintiff's right to vote, alleges:

> 72. By forcibly dis-affiliating Plaintiff from the Republican Party, and thereby preventing her from voting in the upcoming Republican Presidential primary election, Defendants, acting under the color of state

> law, knowingly and intentionally deprived
> Plaintiff of her fundamental right to vote
> under the First Amendment to the United
> States Constitution as applied to the state
> of Connecticut by the Fourteenth Amendment,
> in violation of 42 U.S.C. § 1983.

(Fed. Compl. ¶ 72.)

Both of these claims were litigated in the State Court Action.  Part I.C. of Miller's post-trial brief in the State Court Action was devoted to her argument that she "was deprived of her constitutional right of freedom of association." (Posttrial Brief of the Petitioner, Jane Miller (Doc. No. 54-2, Ex. 3) ("Post-trial Brief") at 16.)  The Memorandum of Decision in the State Court Action explicitly addressed Miller's claim that her right to freedom of association had been violated.  It noted that one of the plaintiff's arguments was "as follows . . . (2) the statutes impermissibly burden the plaintiff's first amendment right of association."  (Memorandum of Decision at 10.)  The court then stated why it did not agree with Miller's argument:

> Political parties are generally free to
> conduct their internal affairs free from
> judicial supervision. . . . This common law
> principle of judicial restraint, rooted in
> the constitutionally protected right of free
> association, serves the public interest by
> allowing the political process to operate
> without undue interference. . . . The
> constitutionally protected right of
> association asserted by the plaintiff, in
> other words, applies equally to the
> defendant.

18

(Id. at 11.)

The Memorandum of Decision also addressed Miller's claim
that there was a violation of her fundamental right to vote.  It
noted that one of the plaintiff's arguments was "as
follows . . . (3) the statutes impermissibly burden the
plaintiff's fundamental right to vote by preventing her from
participating in the Republican primary."  (Memorandum of
Decision at 10.)  The court then stated why it did not agree
with Miller's argument:

> The court certainly agrees that voting in
> general is a fundamental right, but the
> plaintiff's exclusion from the Brookfield
> Republican Party's enrollment list does not
> disenfranchise her from voting in the
> general election. It precludes her from
> participating in the Republican Party
> primaries and caucuses. The court is not
> aware of, nor does the plaintiff cite to,
> any authority for the proposition that
> participation in a party primary or caucus
> is a fundamental right. In fact, there is
> authority which supports the opposite.

(Id. at 11-12.)

## B. Third Count (Violation of Due Process Rights)

The Federal Complaint alleges in the Third Count, a claim
for violation of the plaintiff's due process rights, that:

> 76.  The Defendants use of the
> unconstitutional statutes to forcibly dis-
> affiliate the Plaintiff from the Republican
> Party, and their use of the flawed and
> unconstitutional processes provided therein,

> deprived Plaintiff of her fundamental due
> process rights guaranteed under the
> Fourteenth Amendment to the Constitution of
> the United States, in violation of 42 U.S.C.
> § 1983.

(Fed. Compl. ¶ 76.)

This claim was litigated in the State Court Action. Paragraph 4b of the complaint in the State Court Action alleges that Dunkerton's action was unlawful because: "[t]he conduct of the proceedings violated Petitioner's right to due process of law." (State Compl ¶ 4b.) Part I.B. of the plaintiff's post-trial brief in the State Court Action specifically addressed the fact that "the hearing held by Grimes and Dunkerton violated the Petitioner's constitutional right to procedural due process[.]" (Post-trial Brief at 10.) This issue was also specifically addressed in the Memorandum of Decision. The court found "that the proceedings initiated against the plaintiff in accordance with § 9-60 et seq. did not violate [Miller's] procedural rights to due process of law." (Memorandum of Decision at 8.)

## C. Fourth Count (Violation of Equal Protection Rights)

The Federal Complaint alleges in the Fourth Count, a claim for violation of the plaintiff's equal protection rights, that:

> 79. By forcibly dis-affiliating Plaintiff
> from the Republican Party arbitrarily, and
> allowing other individuals who have
> voluntarily dis-affiliated themselves to
> rejoin the Republican Party without
> instituting statutory proceedings against
> them, Defendants, acting under the color of

> state law, knowingly and intentionally
> deprived Plaintiff of her fundamental right
> to Equal Protection under the Fourteenth
> Amendment to the United States Constitution,
> in violation of 42. U.S.C. § 1983.
>
> 80. As a woman, Plaintiff is a member of a
> protected class.
>
> 81. Because the individuals allowed to
> rejoin the Republican Party are male, this
> violation of Equal Protection under the
> Fourteenth Amendment to the United States
> Constitution should be subject to heightened
> scrutiny.

(Fed. Compl. ¶¶ 79-81.)

Paragraph 4e of the complaint in the State Court Action specifically alleges that the plaintiff was a victim of selective enforcement because "[t]he action of the Defendant holds Petitioner to a standard not required by others." (State Compl. ¶ 4e.) Miller also addressed this claim in her post-trial brief. She argued to the Superior Court:

> As was clearly demonstrated by the April 9,
> 2015 hearing, this scheme almost invariably
> leads to arbitrary and discriminatory
> enforcement repugnant to the well-established
> right to freely associate with the party of
> one's choice. . . . There are several examples
> of arbitrary and/or discriminatory
> enforcement before the Court. Grimes himself
> testified that he was a founding member of a
> completely separate political party (A
> Brookfield Party) just a few years prior, and
> was still listed as an agent of that party at
> the time of trial. Not surprisingly, no
> erasure proceedings were pursued against
> Grimes. There was testimony that . . . another
> previous member of A Brookfield Party and
> member of the Republican Town Committee, Kevin

> McCaffrey, ran for the Board of Assessment
> Appeals as a member of A Brookfield Party
> against a Republican candidate in the very
> same 2012 election in which the Petitioner ran
> for a Board of Finance Position.  No attempt
> was made to expel him from the party.  Grimes
> also testified that Ernesto Nepomuceno ran for
> First Selectmen as an unaffiliated candidate
> in 2009 against William Tinsley, the
> Republican Candidate for First Selectman.  No
> attempt was made to expel Nepomuceno from the
> Republican Party either.  To the contrary, he
> was rewarded with a seat on the Republican
> Town Committee.  The only logical conclusion
> from this evidence is that the Petitioner was
> expelled in an arbitrary and discriminatory
> manner in an attempt to purge certain members
> from the Republican Party.

(Post-trial Brief at 9-10.)

The Memorandum of Decision rejected Miller's contentions with

respect to selective enforcement:

> The other evidence offered in support of
> this contention is testimony elicited from
> the defendant and Grimes that other members
> of the Brookfield Republican Party have
> committed similar acts of disloyalty to the
> party in recent years, and none of them have
> been erased from the party's enrollment
> list.  The plaintiff offered evidence that
> Grimes himself in recent years had founded a
> separate, competing political party, A
> Brookfield Party, and was still listed as
> its agent at the time of the hearing.  These
> actions notwithstanding, Grimes has
> never· been the subject of a discretionary
> erasure.  The plaintiff also offered
> evidence that two other persons ran against
> Republican nominees in the 2009 and 2013
> municipal elections, either as unaffiliated
> candidates or as a member of A Brookfield
> Party, but have not been erased or excluded
> from the Republican Party.

22

> In the court's opinion, the foregoing
> examples are insufficient proof of selective
> enforcement or arbitrary and capricious
> discrimination against the plaintiff.  The
> mere fact that the defendant chose not to
> proceed, in accordance with § 9-60, against
> the two other individuals indicated does not
> lead ineluctably to the conclusion that the
> defendant acted with invidious intent toward
> the plaintiff.  The plaintiff presented no
> specific evidence of discriminatory or
> retaliatory intent toward her.

(Memorandum of Decision at 8-9.)

Now, in the Federal Complaint, Miller claims that she was discriminated against based on her gender, alleging that the Party endorsed a male candidate over her for the Board of Education position, that only one woman was nominated to run by the Party at the July 2013 Caucus, and that only five of the 25 Republican Town Committee members are women with only one in an elected position and none holding an officer position.

However, these facts were all in existence, and either known to or discoverable by the plaintiff, prior to her bringing the State Court Action.  With the exception of the two new comparators, discussed below, the individuals the plaintiff points to in support of her gender discrimination claim are the very ones about whom she introduced evidence in the State Court Action but did not emphasize their gender.  A specific argument about gender discrimination could have been raised in the State Court Action in conjunction with the claim of selective

enforcement.  See Duhaime, 200 Conn. at 364-65 (holding that res judicata applies even where plaintiff seeks to present evidence or grounds or theories not presented in the first action).

The Federal Complaint attempts to offer two new comparators, who "[l]ike Ms. Miller . . . had changed their political affiliation to 'Unaffiliated' and had run for town office as Democratic Party candidates."  (Fed. Compl. ¶ 50.) The Federal Complaint alleges that "in December 2015 these two men were quickly reentered upon the rolls of the Republican Party."  (Fed. Compl. ¶ 51.)

However, the Memorandum of Decision in the State Court Action states with respect to the failure of the plaintiff to present specific evidence of discriminatory intent towards her that "[t]he evidence on this point supports the defendant's contention that he simply exercised his statutory discretion to exclude the plaintiff from the enrollment list for acts indicating that she did not intend to support the party or its candidates."  (Memorandum of Decision at 9.)  The additional allegations with respect to purported comparators do not enable the plaintiff to relitigate her equal protection claim because res judicata "prevents assertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it."  Powell, 282 Conn. at 607.

**D. Fifth Count (Conspiracy to Violate Miller's Civil Rights)**

The Federal Complaint alleges in the Fifth Count, a claim for conspiracy to violate the plaintiff's civil rights, that:

> 84. Motivated by their class-based animus, Defendant Grimes and Defendant Dunkerton, willfully, knowingly and with callous indifference entered into an agreement and conspired to act under the color of state law for the purpose of depriving Plaintiff of her fundamental rights to vote and freely associate, and to equal protection of the law, which are protected under the United States Constitution and §1983.

(Fed. Compl. ¶ 84.)

This claim was not raised in the State Court Action, but it could and should have been raised at that time.  Although Grimes was not named as a defendant in the State Court Action, he testified at the hearing and any actions by either Grimes or Dunkerton forming the basis of this claim occurred prior to the plaintiff bringing the State Court Action.  Thus, the alleged conspiracy arises from the same operative facts that were at issue in the State Court Action.  Res judicata bars "subsequent relitigation of any claims relating to the same cause of action … which might have been made[.]"  Tuccio Custom Homes, LLC, 116 Conn. App. at 530.  "The claim that is extinguished by the judgment in the first action includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected

transactions, out of which the action arose." <u>Comm'r of Envtl.</u>
<u>Prot.</u>, 227 Conn. at 189-90 (emphasis added).  Therefore, the
plaintiff's conspiracy claim is also barred by res judicata.

**E. Strict Mutuality Is Not Required as to Grimes**

Grimes was a not a party in the State Court Action, but
strict mutuality is not required as to him under Connecticut
law.  This is not a situation where res judicata is being
asserted by a party to the first action against someone who was
not a party in that action.  Moreover, as described above, not
only is there an "identity of the issues," but Miller
"deliberately select[ed] [her] forum and there unsuccessfully
present[ed] [her] proofs[.]" <u>Bruno</u>, 136 Conn. App. at 728.  Not
only did the plaintiff fully litigate her claims, but as
reflected in the discussion above of proceedings during the
State Court Action, Grimes testified during those proceedings
and Miller relied on portions of his testimony in support of the
arguments she made in her post-trial brief.  Requiring strict
mutuality as to Grimes would be "to allow a litigant who has
lost on a question of fact to reopen and retry all the old
issues . . . [because she has obtained] a new adversary not in
privity with [her] former one." <u>Bruno</u>, 136 Conn. App. at 728.

## IV.   CONCLUSION

For the reasons set forth above, Defendant Dunkerton's Motion to Dismiss (Doc. No. 40) and Defendant Grimes' Motion to Dismiss (Doc. No. 54) are hereby GRANTED.  Judgment shall enter in favor of the defendants as to all counts in the complaint.

The Clerk shall close this case.

It is so ordered.

Signed this 29th day of March 2017, at Hartford, Connecticut.

_____
/s/ AWT
Alvin W. Thompson
United States District Judge
